Guarantee Title and Trust Company v. Commissioner.
Guarantee Title & Trust Co. v. Commissioner
Docket No. 80416.
United States Tax Court
T.C. Memo 1961-122; 1961 Tax Ct. Memo LEXIS 231; 20 T.C.M. (CCH) 594; T.C.M. (RIA) 61122; April 28, 1961
*231 Roger K. Powell, Esq., 17 S. High St., Columbus, Ohio, for the petitioner. John J. Larkin, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined income tax deficiencies against the petitioner in the amounts of $14,925.04 for 1955 and $115,043.35 for 1956. The only issue for decision is whether the Commissioner erred in adding $2,965.32 to 1955 income and $10,389.88 to 1956 income. The parties have filed a stipulation of facts supplemented by a further stipulation in the transcript. The facts as thus stipulated are adopted as the findings of fact. The petitioner, a corporation, used an accrual method of accounting and filed its returns for 1955 and 1956 at Columbus, Ohio. It described its business as real estate, financing and servicing of mortgage loans. The petitioner entered into a contract with the Bowery Savings Bank of New York City on February 18, 1954, relating to the servicing of mortgages held by Bowery. The petitioner is referred to in the contract of February 18, 1954, as Contractor. That contract provides that Bowery shall compensate Contractor in accordance with the provisions of paragraph 3 thereof for *232 services rendered by Contractor. Paragraph 3 provides, in part, as follows: 3. Compensation of the Contractor. (a) Method of Computation. The monthly compensation of Contractor with respect to each mortgage shall be computed as follows: For each One Thousand Dollars ($1,000) of effective principal amount (as hereinafter defined) of such mortgage, the Contractor shall receive an amount equal to the level payment rate set opposite the applicable basic rate (as hereinafter defined) in the following table: Level Payment
Rate per $1,000
Basic Rate of
of Effective
Compensation
Principal Amount
1/5 of 1%
10"
1/4 of 1%
12 1/2"
3/8 of 1%
18 3/4"
1/2 of 1%
25" *
5/8 of 1%
31 1/4"
3/4 of 1%
37 1/2"
Subparagraph 3(b) provides in part, "Compensation computed in accordance with subparagraphs (a) and (b) of this *233 Paragraph 3 is hereinafter sometimes called 'level payment compensation'." Subparagraph (d) is entitled, "Adjustments in Compensation." It provides that Contractor's right to compensation, whenever any of the following events shall occur, shall cease, with certain stated exceptions. The events are (a) prepayment in full of any mortgage; (b) acquisition of any mortgage property by Bowery with or without foreclosure; (c) cancellation of the agreement by Bowery as to any or all mortgages with or without cause; and (d) termination of the services of Contractor with respect to any mortgage because of default. The subparagraph then provides that, in any of the foregoing events, Contractor shall forthwith pay to Bowery any excess of the total level payment compensation received by Contractor in respect to any such mortgage over "the aggregate compensation for such period which Contractor would have received in respect of such mortgage at the applicable basic rate of compensation on actual monthly principal balances." It also provides that, in any of the foregoing events, Bowery will pay Contractor "as additional compensation hereunder" any excess of the total compensation which Contractor *234 would have received for the period "at the applicable basic rate of compensation on actual monthly principal balances" over the total level payment compensation which Contractor received during the period in respect of such mortgage. The stipulation, after including the above contract, contains the following provision: Said contract refers to a "basic rate of compensation" defined as a basic rate specified as such in certain commitment letters (and other documents not in fact utilized by the parties). A copy of a typical commitment letter so referred to is attached as Joint Exhibit 4-D. Exhibit 4-D is entitled "Blanket COMMITMENT NUMBER: A-4476," and refers to identified mortgages. It is addressed by Bowery to the petitioner and carries an acceptance by the petitioner. Bowery therein states "We are pleased to advise you that we are willing to purchase the bonds or notes and mortgages or deeds of trust listed under the above commitment (numbers) subject to the following terms and conditions, namely:". Condition 3 is in its entirety: "These mortgages are to be serviced by Guarantee Title & Trust Co. at the rate of 1/2 of 1%, under and subject to existing contract." The stipulation *235 does not show anything in regard to the method of payment of interest and principal by a mortgagor. The petitioner made collections of principal and interest upon the mortgages being serviced under the contract and the commitments and transmitted those collections in their entirety to Bowery. Bowery remitted to the petitioner amounts equal to its "monthly compensation" for such collections and servicings, computed at the "level payment rate" described in paragraph 3 of the contract. Bowery had an account on its books entitled "Accounts Payable - Contingent Compensation - Service Charges - Guarantee Title and Trust Company of Ohio," to which it credited the monthly difference between the actual payment made to the petitioner based upon the "level payment rate" and amounts compensated at "basic compensation rate" as applied to current mortgage balances. This account showed that amounts computed at the "basic compensation rate" exceeded the actual payments to the petitioner by $3,384.20 for 1955 and $10,813.62 for 1956. The petitioner established an asset account described as "Accounts Receivable - Bowery Savings Bank," and a liability account described as "Deferred Credit - Mortgage *236 Servicing - Bowery." Equal amounts were debited to the one account and credited to the other. The debit balance shown in the one account and the credit balance shown in the other account at the end of 1955 was $2,965.32, and at the end of 1956 was $13,355.20, or an increase of $10,389.88. The amounts shown in the liability account were reflected as a portion of the amounts identified on the petitioner's returns as "Dealers holdback and servicing reserves," and in the asset account as part of "Accounts receivable." The petitioner reported as income the "level payments" which it received from Bowery in 1955 and 1956. The Commissioner, in determining the deficiencies, added to that income the $2,965.32 increase for 1955 and the $10,389.88 increase for 1956 in the accounts receivable and in the deferred credit account of the petitioner. The issue here is whether these amounts which the Commissioner added to income were properly accruable in the taxable years. The petitioner contends that it had no right to the excess of an amount computed at the "basic rate of compensation" over the amount actually received under the level payment rate of compensation until it successfully completed *237 the services it was contracted to perform with respect to each mortgage, and that Bowery might prevent it from ever being entitled to compensation computed under the basic rate of compensation. It fails to point out how this could occur. If the petitioner were right in accruing income in accordance with the level rate of payment method, then whatever final adjustment is made between the total amount thus received and reported and the correct compensation for services computed on the basic rate method which the petitioner and Bowery would have to make at that time should be reflected in the petitioner's income for the year of the adjustment payment. If any terminations occurred in the taxable years, the stipulation does not disclose that any adjustments were made thereunder. Income could thus escape tax. It is apparent from an examination of all the stipulated material that the level rate of payment method was adopted merely as a convenience to the parties so that the petitioner would receive some payments currently without putting the parties to the inconvenience of making the numerous complicated computations which would be necessary if payments were to be made monthly in accordance *238 with the basic rate of compensation on a declining principal balance. The parties thoroughly understood that the actual compensation to which the petitioner would be entitled was to be determined under the basic rate of compensation applicable to each mortgage. The "typical commitment" letter specifically provides that the petitioner is to receive payment for its services at the basic rate and mentions no other possibility. The contract of February 18, 1954, is to the same effect for, although it provides for monthly payments on account of the compensation at the level payment rate, it nevertheless refers to the commitments and provides that the payments made at the level payment rates are to be adjusted to the basic rate in all cases of advanced termination of the services. The parties seem to assume that the two rates will result in the same total compensation if the servicing of a particular mortgage continues over the life of the loan. The Court has not sufficient facts before it to reach this conclusion but, if it is true, it fortifies the conclusion herein reached. The Commissioner contends that the petitioner was entitled to receive in each year compensation computed at what *239 is called the "basic rate of compensation" and he points to the fact that both Bowery and the petitioner accounted for the amount thus computed on their books of account. Obviously the petitioner should report over a period of years the gross amount of compensation which it receives and is entitled to retain for servicing each mortgage. The petitioner has accrued and reported in each year only the actual payments which it received in the year on the level payment method. The contract provides in regard to the possible termination of the services of the petitioner with respect to any particular mortgage, other than by payment of a mortgage in due course, that the compensation already received on the level payment method is to be adjusted to the amount which the petitioner is entitled to retain computed at the basic rate. Thus, its compensation in every case, when its services with respect to any mortgage have been completed, will actually be the amount to which it is entitled under the basic rate of compensation. The Commissioner has held that the petitioner must accrue and report in each year as to each mortgage a proper proportion of the compensation which it will ultimately receive *240 at the basic rate of compensation and on that method no adjustment will ever be necessary because it will report exactly the ultimate gross compensation which the petitioner is to retain for its services in connection with each mortgage. The commitment letters and the contract of February 18, 1954, give to the petitioner the absolute right to receive compensation on every mortgage serviced at the basic rate of compensation upon completion of the required servicing of that mortgage, and no reason appears why a taxpayer using an accrual method should not accrue that amount rather than the monthly amount computed on the level payment rate and actually paid monthly. A taxpayer on an accrual method of accounting does not report its income on actual payments received each year but must compute its income on compensation as it accrues in each year. The Court is unable to conclude on the record before it that the Commissioner erred with respect to the amounts in issue. The parties have stipulated with respect to a number of other issues. Decision will be entered under Rule 50. Footnotes
*. The parties hereto, for some reason not clearly disclosed, regard only the fourth line of the above tables applicable so far as the present controversy is concerned, that is, one-half of one percent under the heading, "Basic Rate of Compensation," and 25" under the heading, "Level Payment Rate per $1,000 of Effective Principal Amount."↩